**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| TERRY MCCOY | : | TRIAL BY JURY DEMAND |
| 374 SCHLEY STREET | : | |
| NEWARK, NJ 07112 | : | CIVIL ACTION NO: 24-4308 |
|    Plaintiff | : | |
| | : | |
|      v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| FORT DIX FCI | : | |
| 5756 HARTFORD & | : | |
| POINTVILLE ROADS | : | |
| FORT DIX, NJ 08640 | : | |
| | : | |
| NAPHCARE, INC. | : | |
| 2090 COLUMBIANA RD | : | |
| BIRMINGHAM, AL 35216 | : | |
| | : | |
| STEVIE M. KNIGHT, WARDEN | : | |
| FORT DIX FCI | : | |
| 5756 HARTFORD & | : | |
| POINTVILLE ROADS | : | |
| FORT DIX, NJ 08640 | : | |
| | : | |
| FORT DIX MEDICAL DIRECTOR | : | |
| FORT DIX FCI | : | |
| 5756 HARTFORD & | : | |
| POINTVILLE ROADS | : | |
| FORT DIX, NJ 08640 | : | |
| | : | |
| MICHELLE HILLS, RN | : | |
| FORT DIX FCI | : | |
| 5756 HARTFORD & | : | |
| POINTVILLE ROADS | : | |
| FORT DIX, NJ 08640 | : | |
| | : | |
| CARL SCEUSA, MD | : | |
| FORT DIX FCI | : | |
| 5756 HARTFORD & | : | |
| POINTVILLE ROADS | : | |
| FORT DIX, NJ 08640 | : | |
| | : | |
| M. BYNUM, RN | : | |

FORT DIX FCI                                  :
5756 HARTFORD &                              :
POINTVILLE ROADS                             :
FORT DIX, NJ 08640                           :
                                             :
OLUWABUNMI SALIU                             :
FORT DIX FCI                                  :
5756 HARTFORD &                              :
POINTVILLE ROADS                             :
FORT DIX, NJ 08640                           :
                                             :
NICOLETTA TURNER-FOSTER                      :
FORT DIX FCI                                  :
5756 HARTFORD &                              :
POINTVILLE ROADS                             :
FORT DIX, NJ 08640                           :
                                             :
JOHN DOE MEDICAL PROVIDER                    :
FORT DIX FCI                                  :
5756 HARTFORD &                              :
POINTVILLE ROADS                             :
FORT DIX, NJ 08640                           :
    DEFENDANTS.          :

## FIRST AMENDED CIVIL ACTION COMPLAINT

Plaintiff by and through his attorney Brian J. Zeiger, Esquire, hereby alleges the following:

## JURISDICTION & VENUE

1.  Plaintiff alleges civil rights violations:

    a.  This action is brought under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for the Defendants' use of denial of medical care and deliberate indifference of Plaintiff's medical needs while incarcerated at FCI Fort Dix, in regard to those Defendants who are federal employees.

    b.  Also, this action is brought under 42 U.S.C. 1983, Defendants' use of denial of

medical care and deliberate indifference of Plaintiff's medical needs while incarcerated at FCI Fort Dix, in regard to those Defendants who are not federal employees.

c. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

2. Defendants reside in the District of New Jersey and venue is proper pursuant to 28 U.S.C. § 1391(b).

3. Plaintiff previously filed under the Federal Tort Claim Act (hereinafter "FTCA").

a. On August 11, 2023, the Plaintiff filed under the FTCA.

b. On September 11, 2023, Plaintiff received acknowledgment of the properly filed FTCA from the U.S. Department of Justice, Federal Bureau of Prisons, Northeast Regional Office, signed by A. M. Johnson, Regional Counsel.

c. The letter from the DOJ acknowledges the date of the initial loss as March 31, 2022.

d. As of March 12, 2024, Plaintiff's counsel has not received an official denial of the claim from the U.S. Department of Justice. Therefore, under 28 U.S.C. § 2675(a), "the failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim. Further, under 28 U.S.C. § 2401(b), a claim is timely if it is: 1. submitted to the appropriate federal agency within two years of accrual; and 2. filed in federal court within six months of the agency's final denial.

e. Accordingly, the instant matter is timely filed, and this Court has jurisdiction.

## **PARTIES**

4. At all times relevant hereto the Plaintiff, Terry McCoy is a resident of Essex County, New Jersey, residing at 374 Schley Street, Newark, NJ 07112.

5. Defendant United States of America conducts business at 5756 Hartford & Pointville Roads, Fort Dix, NJ 08640, (hereinafter collectively "USA defendant").

6. Defendants Warden Knight & Fort Dix Medical Director are sued in their inidivudal capacity and have a business address of 5756 Hartford & Pointville Roads, Fort Dix, NJ 08640.

7. Defendants Michelle Hills, Carl Sceusa, M. Bynum, Oluwabunni Saliu, Nicoletta Turner-Forster, and John Doe Medical Provider, and are being sued in both their individual and official capacities and have a business address of 5756 Hartford & Pointvile Roads, Fort Dix, NJ 08640.

8. Defendant NaphCare, Inc., conducts business at 2090 Columbiana Rd, Birmingham, AL 35216, (hereinafter "NaphCare").

9. At all times material hereto, the defendants acted under color of law and within the course and scope of their employment, pursuant to the customs, policies, practices, ordinances, regulations, and directives of the United States of America and the Commonwealth of Pennsylvania.

## **FACTUAL BACKGROUND**

10. In March 2022, Plaintiff was an inmate at FCI Fort Dix.

11. The plaintiff severely injured his knee while playing basketball at FCI Fort Dix, and he was generally denied care for months. As a result of the denial of care, Plaintiff had a far more invasive medical procedure, and now Plaintiff has a permanent knee injury. A general timeline of the denial of care is as follows:

a.  On March 31, 2022, while playing basketball, coming down from shooting, Plaintiff was hit in the knee by another inmate. Plaintiff suffered from intense pain and was unable to bear any weight or straighten the leg. The knee was deranged and swollen. Defendant Michelle Hills, RN, examined Plaintiff on that day and filled out medical forms. Defendant Hills provided little to no medical care.

b.  Further, on March 31, 2022, Defendant Carl Sceusa, MD, filled out additional medical forms regarding Plaintiff's injury. Sceusa examined Plaintiff; he determined right knee was swollen and tender to the touch with an obvious derangement of the bone. Plaintiff was given a Ketorolac Injection. Defendant Sceusa ordered Plaintiff to be transferred to the local emergency room. Defendant Sceusa provided little to no medical care.

c.  On April 1, 2022, Defendant M. Bynum, RN, received Plaintiff back from emergency room. The order from the emergency room states Plaintiff needs crutches and knee immobilizer. Plaintiff was ordered to get MRI and follow up with Orthopedics. Plaintiff was given Ibuprofen. Defendant Bynum did not schedule Plaintiff for an MRI, and provided little to no medical care to Plantiff.

d.  On April 5, 2022, Defendant M Bynum, RN, saw Plaintiff, observed a patella injury. Bynum noted an MRI and orthopedic consults were pending. Defendant Bynum provided Plaintiff with limited to no care.

e.  On April 20, 2022, Defendant M Bynum, RN, followed up with Plaintiff, but still did not provide Plaintiff with any treatment for his knee. Plaintiff was still waiting for an MRI and a follow-up with an orthopedic surgeon.

f.  Finally, 22 days later, on April 21, 2022, Plaintiff had an MRI of his knee completed by MRI completed by Charles Muchnok, MD, and found a complete tear of the patella tendon in Plaintiff's knee.

g.  On May 3, 2022, Defendant Carl Sceusa, MD, reported that Plaintiff's MRI was read by Dr. Bills, who agreed with Dr. Mucknok. Plaintiff had a complete right patella tendon rupture. Plaintiff's knee was completely dislocated. Plaintiff was in a wheelchair using a knee immobilizer. Plaintiff was allegedly scheduled for surgery in the next ten days.

h.  On May 5, 2022, five weeks after Plaintiff injured his knee, Defendants M. Bynum, RN, and Carl Sceusa, MD, sent a consultation request for authorization for Plaintiff to have knee surgery.

i.  On June 6, 2022, nine weeks after Plaintiff injured his knee, Defendants Oluwabunmi Saliu and Carl Sceusa, MD, again sent a request for authorization for surgical consultation and scheduling.

j.  On June 9, 2022, Oluwabunmi Saliu conducted a follow-up examination of Plaintiff's injured knee and kept giving Plaintiff ibuprofen, tantamount to little or no care.

k.  On July 22, 2022, Plaintiff's chart from Fort Dix indicated surgery was scheduled for August 12, 2022.

l.  On July 28, 2022, Jeff Wilk, documented the surgery was canceled and therefore delayed, without providing a reason and without following up to have Plaintiff immediately scheduled for surgery.

m. On August 12, 2022, Defendants M. Bynum, RN. Nicoletta Turner-Foster acknowledged on Plaintiff's chart that surgery for the same day, which was arranged by Fort Dix had been canceled; they claimed they were attempting to schedule with a new surgeon. No information was provided by the Defendants as to why the surgery was canceled. Plaintiff was again denied care for his injury.

n. On August 23, 2022, Plaintiff was transported to Virtua Orthopedics for a consultation regarding surgery on his knee.

o. On September 14, 2022, Plaintiff had surgery by Dr. Sean McMillan at Virtua Health, documented in his prison chart by Defendant Michelle Hills, RN.

p. On September 21, 2022, Edward Fox, RN, noted that Plaintiff was scheduled for a follow-up after the surgical procedure on his knee.

q. On October 3, 2022, Defendant M. Bynum, RN, noted they consulted with Dr. Bills on September 27, 2022. Based on the consultation, Defendant Bynum acknowledged Plaintiff needed to follow up with the surgeon this week.

r. October 4, 2022, Defendant Carl Sceusa, MD, followed up post-surgery. He remarked that Plaintiff needed to do physical therapy and follow up with the orthopedic surgeon this week.

s. The plaintiff was scheduled on October 28, 2022, for a follow-up with the surgeon.

t. Due to the long delay, Dr. Sean McMillan was not able to perform a simple patellar tendon repair. Instead, the delay caused Dr. McMillan to perform a far more invasive surgery; Plaintiff had an augmentation of repair by an Achilles

allograft. Further, the more invasive procedure left Plaintiff's knee stiffer and weaker.

u. Also, due to the more invasive product, as the Plaintiff gets older, he will undergo degenerative joint disease at a quicker rate. Plaintiff will now have to undergo rays every year and MRIs every two to three years to check the status of the knee and the need for additional surgeries.

v. Plaintiff's knee is now permanently injured, which could have been avoided had the Plaintiff had timely surgery on his knee at the time of his injury.

12. Additionally, all of the individual medical provider Defendants were personally involved in denying Plaintiff medical care for his knee—Plaintiff is specifically alleging all of the individual Defendants were personally involved in the lack of care.

13. Based upon information and belief, Defendant NaphCare was a subcontractor of Defendant USA.

14. Based upon information and belief, Defendant NaphCare was responsible for scheduling and transporting inmates to and from FCI For Dix for medical appointments.

15. Based upon information and belief, Defendant NaphCare did not properly schedule and transport Plaintiff for medical appointments outside of FCI Fort Dix throughout the time period contained within the complaint.

16. Based upon information and belief, Defendant NaphCare's lack of properly scheduling and transporting Plaintiff to and from medical appointments to and from FCI Fort Dix throughout the time period contained with the complaint was a continuing course of conduct.

17. Defendant USA, Defendant Knight and Defendant Medical Director, were responsible for creating, implementing, and enforcing policies, practices, and procedures to ensure that all

pretrial detainees and prisoners were provided proper medical healthcare while in their custody.

18. As a direct and proximate cause of the Defendants' actions and inactions, Plaintiff suffered immense physical injuries, and the delay in care caused him to have an invasive surgical procedure that has left him permanently disabled.

19. Defendant USA, Defendant Knight and Defendant Medical Director,  failed to create, implement, and enforce policies, practices and procedures to ensure that proper care was provided to the Plaintiff.

20. Defendant USA, Defendant Knight and Defendant Medical Director, along with the warden and medical director defendants, failed to ensure medical personnel properly examined inmates complaining of physical health complaints while in their custody.

21. Defendant USA, Defendant Knight and Defendant Medical Director, failed to ensure that medical referrals were properly referred to outside medical professionals to provide care for inmates.

22. Defendant USA, Defendant Knight and Defendant Medical Director, failed to provide medical personnel and staff to treat inmates with physical complaints and medical conditions while living at the CCCF.

**COUNT I:**
**FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE**
**DELIBERATE INDIFFERENCE**
**EIGHTH AND FOURTEENTH AMENDMENTS –**
**PLAINTIFF V. ALL DEFENDANTS**

23.    Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

24.    The plaintiff repeatedly complained of severe pain in his knee.

25.    Defendants did not properly investigate or treat Plaintiff's medical complaints.

26.    Defendants did not properly refer Plaintiff for medical treatment for his complaints complaint.

27.    Defendants delayed care for Plaintiff's for knee injury.

28.    Even after the Defendants knew of Plaintiff's condition, they still delayed his care.

29.    Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being ignored Plaintiff's complaints of physical pain.

30.    Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being ignored Plaintiff's obvious need for medical treatment and evaluation.

31.    Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being denied Plaintiff medical care.

32.    Defendants deliberately, recklessly, and with conscious disregard of Plaintiff's wellbeing, failed to ensure that Plaintiff received prompt medical attention;

33.    Defendants acted deliberately, recklessly, and with a conscious disregard of the obvious risk that Plaintiff had a serious medical issue.

34.    Defendants' actions caused Plaintiff to suffer needlessly, served no penological purpose, and caused him immense pain and, eventually, far more invasive surgery, resulting in a permanent injury.

35.    As a direct and proximate cause of Defendants' actions, Plaintiff suffered injury, immense physical pain, humiliation, and fear.

36.    The delay in care caused additional injuries to Plaintiff.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages where applicable, delay damages, attorneys fees and allowable costs of suit and brings this action to recover the same. Plaintiff is

not seeking punitive damages against the USA.

**COUNT II:**
**SUPERVISOR LIABILITY –**
**EIGHTH AND FOURTEENTH AMENDMENTS –**
**PLAINTIFF V. USA, KNIGHT, and MEDICAL DIRECTOR DEFENDANTS**

37. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

38. The government defendants, along with the warden and medical director defendants were deliberately indifferent to the needs of Plaintiff being held in the behavior health wing.

39. Upon information and belief, Defendants were aware that certain policies and customs posed a grave danger to inmates detained in the FCI, including the Plaintiff.

40. Defendants maintained a policy of staffing the FCI with inadequate medical providers.

41. Defendants did not properly refer the Plaintiff to the proper physician to treat his complaints of pain.

42. The policy, procedures and standard of having rounds conducted from the front of the cell and not having a physical healthcare provider actually physically examine Plaintiff, were defective and therefore failed the Plaintiff, ultimately causing her Plaintiff severe pain and suffering.

43. In spite of such knowledge, Defendants did nothing to implement corrective policy or correct customs, which Defendants knew posed a serious danger to inmates and pre-trial detainees, including Plaintiff.

44. The Defendants were deliberately indifferent to the well-being of the inmates detained and serving time in the FCI, including the Plaintiff.

45. Defendants knew of their supervisory failures and knew that ill detainees and inmates were not receiving adequate treatment but deliberately failed to correct the problem.

46.     Defendants were aware of a substantial risk that ill detainees and inmates would not receive proper medical care.

47.     Defendants were deliberately indifferent to the consequences of their established policies and customs.

48.     The defendant's establishment and maintenance of the above-mentioned policies and customs directly caused the plaintiff to be deprived of his constitutional rights.

49.     As a direct and proximate result of the Defendants' deliberate indifference, Plaintiff suffered immense physical pain, humiliation, fear, physical injuries, and death. Moreover, the Plaintiff's family suffered mental anguish and a loss of companionship, comfort, financial support, and guidance.

50.     Plaintiff also makes a claim for such injuries, damages and consequences resulting from the incident of which she has no present knowledge.

51.     As a result of the policies that resulted in a delay in care, Plaintiff suffered additional injuries to his knee, which are now permanent.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages where applicable, delay damages, interest, attorneys fees, and allowable costs of suit and brings this action to recover same. The plaintiff is not seeking punitive damages against the USA.

**COUNT III:**
**VIOLATION OF THE FEDERAL TORT CLAIM ACT**
**28 U.S. CODE § 2674**
**PLAINTIFF v. USA**

52.     Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

53. The Defendants were acting as federal employees within the scope of his or her official duties at the time of the instant matter.

54. Plaintiff was injured by a delay in medical care by a federal government employee;

55. The Defendants were employees of the USA and were acting within the scope of their official duties;

56. The Defendants' act of delaying medical care were negligent or wrongful; and

57. The negligent or wrongful acts of the Defendants, i.e., the delay in medical care, proximately caused the injury or damage of which Plaintiff complains, that he now has a permanent knee injury that could have been avoided had he received timely care.

58. The plaintiff previously provided documentation to the USA establishing that his claim satisfied all the elements of the FTCA.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages where applicable, delay damages, interest, attorneys fees, and allowable costs of suit and brings this action to recover same. The plaintiff is not seeking punitive damages against the USA.

**COUNT IV – NEGLIGENCE**
**PLAINTIFF v. NAPHCARE, INC.**

59. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

60. The negligent conduct of Defendant NaphCare, in the course and scope of their relationship with Defendant USA, consists of the following:

    a. Failure to schedule Plaintiff for proper medical treatment

    b. Failure to properly transport Plaintiff for proper medical treatment

    c. Failure to ensure Plaintiff was given proper medical care as prescribed by the

other Defendants

d. Failure to schedule and transport Plaintiff for surgery

e. Failure to schedule and transport Plaintiff to post-surgical follow up appointments

WHEREFORE, Plaintiff demands damages, including punitive damages, against Defendant, jointly and severally, in excess of five million dollars ($5,000,000), and in excess of local arbitration limits, exclusive of interests and costs.

Respectfully submitted,

/s Brian J. Zeiger, Esquire
BRIAN J. ZEIGER, ESQUIRE
Identification No.: 87063
zeiger@levinzeiger.com
LEVIN & ZEIGER, LLP
1500 JFK Blvd, Suite 620
Philadelphia, Pennsylvania 19102
215.546.0340